UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GARY COLLINS,<br><br>                              Plaintiff,<br><br>v.<br><br>NATIONWIDE AGRIBUSINESS<br>INSURANCE COMPANY; and DOES 1<br>THROUGH 10,<br><br>                              Defendants. | Case No.:  19-cv-1392-GPC-MSB<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>**[ECF No. 30]** |

Before the Court is Defendant Nationwide Agribusiness Insurance Company ("Defendant" or "Nationwide")'s Motion for Summary Judgment ("MSJ").  ECF No. 30. Plaintiff responded in opposition, ECF No. 37, and Defendant replied, ECF No. 40.  For reasons below, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

### I.     Factual Background

Defendant issued Business Auto Policy No. FPK BAN 78-2-1568321 ("Policy") to Suncoast Botanicals, Inc. ("Suncoast") for the policy period of June 23, 2016 to June 23,

2017.  Pl.'s Resp. to Separate Statement of Undisputed Material Facts, Undisputed Fact ("UF") No. 1, ECF No. 37-3.  The Policy includes collision coverage, medical payments coverage with limits of liability of $5000 and uninsured motorist ("UIM") coverage with limits of liability of $1 million per accident.  *Id.*, UF No. 2.

On March 7, 2017, Plaintiff, driver of a vehicle owned by Suncoast, was involved in a heavy-impact rear collision with an uninsured motorist (an "Accident").  *Id.*, UF No. 3.  The next day, Plaintiff submitted a first-party claim to Defendant seeking collision, medical payments, and UIM coverage benefits from the Accident ("Claim").  *Id.*, UF No. 4.

On May 9, 2017, Plaintiff became dizzy and experienced shortness of breath at his home, ultimately losing consciousness and striking his head on the kitchen counter.  *Id.*, UF No. 7.  He was diagnosed with deep vein thrombosis ("DVT") and a pulmonary embolism ("PE").  *Id.*, UF No. 8.

Plaintiff claimed that the Accident caused the DVT and PE.  *Id.*, UF No. 12.  On May 23, 2017, Plaintiff emailed Defendant's claims adjustors, which included the following statement:

> The day before I was discharged from the hospital I had an ultrasound test on both my legs and they found a blood clot behind my right knee.  The clot is called a DVT, Deep Vein Thrombosis.  I was released on 5/14 and have been recuperating at home since.  After reviewing my medical history, lifestyle, and recent events both of my doctors indicated that trauma from the auto accident caused or contributed to the blood clots in my right leg which traveled up into my lungs.  I had let my orthopedic doctor know something was wrong with my right knee but didn't get scheduled for an MRI before this happened.

/ / /

Pl.'s Evid. Ex. 5, ECF No. 37-4 at 116.[1]  Defendant's Claim File Note, created on June 12, 2017, documented the information delivered by Plaintiff.  Pl.'s Evid. Ex. 6, ECF No. 37-4 at 119.

Plaintiff and Defendant's claims adjusters exchanged emails throughout July 2017 regarding the Policy's coverage, where Plaintiff expressed concerns over the financial implications of the DVT/PE.  Pl.'s Evid. Ex. 7, ECF No. 37-4 at 121–23.  Defendant's claims adjuster informed Plaintiff that any bills over the $5000 medical payments coverage will be Plaintiff's responsibility until the UIM claim is concluded, in which case the UIM coverage will pay for the out-of-pocket medical expenses, wage loss, and compensation for pain and suffering.  *Id.* at 122–23.  In late November 2017 it was internally discussed within the Defendant's company whether Plaintiff's UIM claim should be transferred to a "Level 3" adjuster.  Pl.'s Evid. Ex. 9, ECF No. 37-4 at 130.  On February 2, 2018, Plaintiff emailed the Defendant's medical payments representative to inform that he will be submitting a bill that will fulfill the $5000 medical coverage, and that there will be additional bills over the next couple of months.  Pl.'s Evid. Ex. 11, ECF No. 37-4 at 136.  On February 15, 2018, the claim was reassigned as Level 3 to Mr. Paul Current, Commercial Casualty Claims Specialist III.  *Id.* at 135.

On February 22, 2018, Mr. Current had a telephone call with Plaintiff in which Plaintiff stated that "[h]e wants to wait until at least April before discussing settlement."  Pl.'s Evid. Ex. 13, ECF No. 37-4 at 143–44.  The same day, Mr. Current via email asked Plaintiff to send copies of Plaintiff's medical records.  Decl. of Paul Current ("Current Decl.") Ex. B, ECF No. 30-5 at 3.  Mr. Current followed up on May 7, 2018, and Plaintiff

---

[1] The Court is aware that both parties submitted reams of evidentiary objections.  To the extent that the objected-to evidence is admissible and relied-on, the Court overrules the objections.  To the extent that the objected-to evidence is not referenced in this Order, the Court overrules the objections as moot.

replied on May 9, 2018, stating that he can forward the materials next week, and that he is "in no hurry to begin claim discussions." *Id.* at 2–3.

From May 2018 to July 2018, Plaintiff provided additional medical records to Defendant.  UF No. 11, ECF No. 37-3.  Defendant's Medical Claims Consulting Group evaluated the available medical records regarding the alleged causal relationship between Plaintiff's DVT/PE and the Accident to support a valuation of the Claim in connection with an anticipated settlement offer to Plaintiff.  *Id.*, UF No. 13.  On July 23, 2018, Medical Claims Consulting Specialist provided a Medical Review on the issue.  Pl.'s Evid. Ex. 16, ECF No. 37-4.  The Medical Review made several suggestions, one of them being: "Consider a cardiologist peer review."  *Id.*

On August 21, 2018, Mr. Current conveyed a $175,000 settlement offer to Plaintiff via phone call.  Current Decl. ¶ 13, ECF No. 30-3.  Plaintiff told Mr. Current that (1) Plaintiff's records should be reviewed by a cardiologist, (2) Plaintiff did not accept the offer, and (3) Plaintiff was going to contact a lawyer.  Decl. of John Gary Collins ("Collins Decl.") ¶ 18, ECF No. 37-2.  The next day, Defendant requested an external peer review of the medical records.  UF No. 20, ECF No. 37-3.

Shortly after the $175,000 settlement offer, Plaintiff reached out to attorney Jordan Harlan and explained the circumstances.  From late August 2018 through October 2018, the two spoke several times.  Collins Decl. ¶¶ 19, 20, ECF No. 37-2.

On October 1, 2018, the Peer Review Report concluded that (1) there was a highly positive relationship between the Accident and the hospitalization for the PE, and (2) Plaintiff had no work restrictions going forward as a result of the DVT and PE.  UF Nos. 21–24, ECF No. 37-3.  On October 16, 2018, Mr. Current conveyed a settlement offer of $350,000.  Current Decl. ¶ 17, ECF No. 30-3; Current Decl. Ex. F, ECF No. 30-9.

Subsequently on October 27, 2018, Plaintiff suffered a second PE.  Collins Decl. ¶ 23, ECF No. 37-2.  He spent five days in intensive care.  *Id.*

4

On December 3, 2018, Plaintiff discussed the overall matter with Mr. Harlan.  *Id.* ¶ 25.  The next day, December 4, 2018, Plaintiff asked for additional information regarding the breakdown of the $350,000 offer, and Defendant provided it.  UF Nos. 26, 28, ECF No. 37-3.  On January 8, 2019, Plaintiff officially retained Mr. Harlan.  Collins Decl. ¶ 27, ECF No. 37-2.

On January 23, 2019, Defendant received a letter of representation dated January 14, 2019 from Mr. Harlan, along with a demand for arbitration.  UF No. 30, ECF No. 37-3.  By letter dated March 8, 2019, Mr. Harlan tendered a time-limited $1 million policy limits demand to Defendant on behalf of Plaintiff.  *Id.* UF No. 31.  In connection with the demand, Defendant was advised of Plaintiff's second PE incident, the related hospitalization, and his inability to work at his flower farm, none of which had been previously relayed to Defendant.  *Id.* UF Nos. 32–34.  On April 4, 2019, Defendant accepted the demand and agreed to pay the $1 million policy limits to Plaintiff for his Accident-related damages.  *Id.* UF No. 36.  On April 10, 2019, Defendant issued payment in the amount of $1 million jointly to Mr. Harlan and Plaintiff.  *Id.* UF No. 37.

## II.  Procedural History

On June 26, 2019, Plaintiff filed a complaint in the Superior Court of the State of California for the County of San Diego, which Defendant removed to federal court on July 25, 2019.  Def.'s Notice of Removal, ECF No. 1.  Plaintiff alleged two causes of action: (1) breach of contract, specifically the "contractual obligations to pay Collins' claim for uninsured motorist benefits"; and (2) breach of the implied covenant of good faith and fair dealing, including "the duty to refrain from engaging in any act which would interfere with Collins' enjoyment of the intended benefits of the Policy."  Compl. 3–6, ECF No. 1-2.  Plaintiff requested various forms of monetary relief, including punitive and exemplary damages.  *Id.* at 6.

On June 23, 2020, Defendant filed the MSJ, which requests the Court to dismiss all causes of action against Defendant, including Plaintiff's request for punitive damages. ECF No. 30.  The MSJ argues that Plaintiff's causes of action and request for punitive damages fail as a matter of law.  Def.'s Mem. of P. & A., ECF No. 30-1.  Plaintiff filed a Response in Opposition on July 2, 2020.  ECF No. 37.  On August 13, 2020, Defendant filed a Reply.  ECF No. 40.

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex*, 477 U.S. at 323.  The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23.  In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading.  The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

genuine issue for trial.'" *Id.* at 324.   The non-moving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party.  *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995).  In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

## DISCUSSION

### I.   Breach of Contract

Defendant moves for summary judgment on the First Cause of Action, arguing that Defendant complied with the express terms of the Policy.  Defendant paid Plaintiff: (1) the full $5000 Policy limit under the medical payments coverage, (2) the total loss of the vehicle under the collision coverage, and (3) $1 million, which is the Policy limit under the UIM coverage.  UF Nos. 2, 9, 37, ECF No. 37-3.

"Under the express terms of the contract, [Defendant] met its financial obligation by paying . . . the policy limits." *Madrigal v. Allstate Indem. Co.*, No. CV 14-4242 SS, 2015 WL 12747906, at *15 (C.D. Cal. Sept. 30, 2015).  Plaintiff agrees.  *See* Pl.'s Resp. in Opp'n 17 n.2, ECF No. 37.  Since Plaintiff cannot demonstrate that Defendant breached the express terms of the Policy, Defendant is entitled to summary judgment on its breach of contract claim. *See Madrigal*, 2015 WL 12747906 at *15.

Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on the First Cause of Action.

### II.   Implied Covenant of Good Faith and Fair Dealing

Defendant moves for summary judgment on the Second Cause of Action, breach of the implied covenant of good faith and fair dealing, arguing that (1) Plaintiff has not presented evidence that Defendant acted unreasonably in handling the Claim; and (2)

7

regardless, Defendant cannot be liable for "bad faith"[2] because a "genuine dispute" existed over the value of Plaintiff's Claim.  Def.'s Mem. of P. & A. 9–15, ECF No. 30-1. Plaintiff disagrees, arguing that Defendant's investigation and settlement offer were unreasonable in several ways.  Pl.'s Resp. in Opp'n 17–28, ECF No. 37.

An implied covenant of good faith and fair dealing exists "as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *see also Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979) ("The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.").

To succeed on this claim, the plaintiff must show that the defendant's conduct was unreasonable or without proper cause.  *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 435, *as modified on denial of reh'g* (June 24, 2020), *review denied* (Aug. 12, 2020).  While the reasonableness of the insurer's conduct is typically a question of fact, "it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence."  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001), *as modified on denial of reh'g* (July 30, 2001).  In determining unreasonableness and bad faith, the conduct must be more than a mistake.  *Mosley*, 49 Cal. App. 5th at 436.  There must be "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party."  *Id.*  At the same time, while dishonesty,

---

[2] In this Order the Court uses "bad faith" and the breach of the implied covenant of good faith and fair dealing interchangeably.  *See Archdale v. Am. Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 466 (2007).

fraud, and concealment may be dispositive of bad faith, *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 876 (1973), "absence of evidence, circumstantial or direct, showing actual dishonesty, fraud, or concealment is not fatal." *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 706 (1984) (emphasis removed).

Here, the record contains sufficient evidence which, when viewed most favorably to Plaintiff, would permit a reasonable jury to find that Defendant's conduct in handling the Claim was unreasonable, therefore violating the implied covenant of good faith and fair dealing. Specifically, sufficient evidence exists where the jury could find that the investigation process and settlement offers were both unreasonable. Since the investigation could be found to have been conducted in bad faith, Defendant is not entitled to a genuine dispute defense. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on the Second Cause of Action.

### A.      Reasonableness of Defendant's Conduct

In the insurance context, a court may find that a defendant's conduct was in bad faith if the investigation or settlement offer was unreasonable. *See, e.g.*, *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 214–15 (1986) (discussing inadequate investigations as grounds for bad faith); *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 887 (1985) (admitting evidence of settlement offer to prove breach of covenant of good faith and fair dealing). Plaintiff has alleged both an unreasonable investigation and settlement offer in his Complaint, and Defendant submits that Plaintiff has not offered evidence to demonstrate unreasonableness. The Court will address each of these grounds in turn.

### 1.      Investigation

"Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879 (2000), *as modified on denial of reh'g* (Mar. 29, 2000). "An insurance company may not ignore evidence which supports coverage. If it

does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1074 (2007) (citation omitted), *as modified on denial of reh'g* (Apr. 20, 2007). "For the insurer to fulfill its obligation not to impair the right if the insured to receive the benefits of the agreement . . . it is essential that an insurer fully inquire into possible bases that might support the insured's claim." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979).

Plaintiff has presented evidence which raises a genuine issue of material fact whether Defendant's investigation process was reasonable and conducted in good faith. Specifically, Defendant understood that valuation of the Claim depended to a great extent on the connection of the Accident and the PE, yet it failed to conduct the necessary investigation as to this nexus before it offered Plaintiff $175,000.

First, Defendant argues that the delays were wholly Plaintiff's fault.  The Court disagrees.  While it is true Plaintiff sought to defer settlement discussions until the fall of 2018, there is no explanation why the *investigation itself*, which is presumably a separate process from a settlement discussion, could not have happened sooner.  On May 23, 2017, Plaintiff emailed Defendant and informed Defendant of his DVT/PE diagnosis and explained how his condition had led to four life-saving surgical procedures over the course of five days.  Defendant's own records indicate that it had been aware of the issue since mid-June 2017.  Plaintiff and Defendant's claims adjusters discussed the DVT/PE's implications on both the medical and UIM coverage in July 2017.  Pl.'s Evid. Ex. 7, ECF No. 37-4 at 121.  While the provision of medical records was not complete until July 2018,[3] Defendant's initial request for the records occurred in mid-to-late February 2018.

---

[3] Defendant states that Plaintiff "failed to provide Nationwide with all of his medical records until August 2018," Def.'s Reply at 12, ECF No. 40, but cites to UF No. 15, ECF No. 37-3 (stating that the Medical Claims Consulting Specialist confirmed her opinion on

That demonstrates a six-month delay (from July 2017 to February 2018) on the part of Defendant in initiating a medical investigation.

Second, Plaintiff has presented evidentiary exhibits which a reasonable jury could rely on to find that the initial investigation leading to the July 2018 Medical Review was unreasonable and conducted in bad faith.  "A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim.  The insurer may not just focus on those facts which justify denial of the claim." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721 (2007) (quoting *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996)), *as modified* (Dec. 19, 2007).

Here, deposition records of Mr. Current indicate that he questioned the causal relationship between the Accident and DVT/PE "from the very beginning."  Pl.'s Evid. Ex. 1, ECF No. 37-4 at 6.  This opinion was held despite Mr. Current's impression of the Plaintiff as being "very honest."  Pl.'s Evid. Ex. 13, ECF No. 37-4 at 143.  More troubling, Mr. Current never attempted to contact Plaintiff's physicians to ascertain their opinions on the potential causal relationship even though he could have, even though Defendant was fully aware of the issue, and even though he knew it "was a very important thing to figure out."  Pl.'s Evid. Ex. 1, ECF No. 37-4 at 7–10.  Further, when referring the claim to the Medical Claims Consulting Specialist for the initial review, Mr. Current inserted facts revealing bias such as: (1) "There were no complaints of knee pain," (2) "He first complained of right knee pain on April 3, 2017," and (3) "The claimant stated that his cardiologist indicated that the DVT was probably due to the trauma from the [Accident] when he hit his knee.  However, this is not stated in the medical reports we have."  Pl.'s Evid. Ex. 15, ECF No. 37-4 at 150–51.  Mr. Current

August 8, 2018).  UF No. 11, ECF No. 37-3 appears more instructive: "Between May 2018 and July 2018, [Plaintiff] provided additional medical records to [Defendant]."

stated at his deposition that the medical reviewer did not need him to state what is not in the medical reports, and that the job could have been done "just fine without me putting any of this summary into the log." Pl.'s Evid. Ex. 1, ECF No. 37-4 at 11–12.

Relatedly, the Medical Review that was created from the investigation ignored certain important facts that Defendant knew. Defendant was aware of Plaintiff's right knee pain prior to the DVT/PE on May 9, 2017, yet the Medical Review states: "If Gary had no record of c/o pain or discomfort in either leg, the most likely cause of his DVT could be his history of ulcerative colitis or his asthma." Pl.'s Evid. Ex. 1, ECF No. 37-4 at 21–22; Pl.'s Evid. Ex. 16, ECF No. 37-4 at 157. Given the fact that Defendant was informed of Plaintiff's right knee pain, there was a "record" prior to the DVT/PE on May 9, 2017. In view of the above, a reasonable fact-finder could conclude that Mr. Current was unduly nudging the initial investigation to justify denying Plaintiff's UIM claim, and that Defendant was ignoring evidence available that would support the insured's claim.

Further, Defendant offered $175,000 before conducting any peer review—even though it was suggested in the Medical Review to ascertain whether the DVT/PE was caused by the accident. Pl.'s Evid. Ex. 16, ECF No. 37-4 at 158. In fact, the external peer review concluded that there was a highly positive relationship between the Accident and Plaintiff's hospitalization for the DVT/PE. Pl.'s Evid. Ex. 23, ECF No. 37-4 at 202. And based upon the belated peer review, Mr. Current was given settlement authority in a range of $350,000 to $500,000. A reasonable jury could find that jumping to a settlement offer without even following the initial investigation's own suggestion to further examine the issue constitutes bad faith.

Lastly, Plaintiff presented evidence where a reasonable jury could find that Mr. Current attempted to improperly influence the external peer review as well. Plaintiff has presented email records where Mr. Current this time underlined certain statements, which happen to be the same statements on knee pain that he had flagged when referring the

claim for initial review.  Pl.'s Evid. Ex. 22, ECF No. 37-4 at 197.  Such underlining could be construed as evidence of bias.  *See* H. Walter Croskey, Rex Heeseman, Jeffrey I. Ehrlich & Peter H. Klee, *California Practice Guide: Insurance Litigation* § 12:904 (2020) ("For example, did the claims examiner use marker pens or other means to highlight only the evidence in the file supporting denial?").

Defendant argues that its conduct is part of the normal practice within the insurance industry.  It relies on expert testimony, which opined that "[t]here were no unreasonable or unexplained delays on the part of [Defendant] in its investigation."  Decl. of Michelle R. Bernard Ex. K, ECF No. 30-15 at 5.  However, Plaintiff has provided sufficient evidence to cast doubt on the expert's credibility based on the expert's prior involvement with the insurance industry (but rarely in support of insurance policy-holders) and the potentially conflicting statements that the expert made during the deposition, *see, e.g.*, Pl.'s Evid. Ex. 4, ECF No. 37-4 at 84–87, 112–13.  As such, Defendant's expert testimony is insufficient to support summary judgment on the issue of bad faith in the delay and manner of the investigation.[4]  *See, e.g.*, *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 895–96 (N.D. Cal. 2016) (denying summary judgment in part because a reasonable jury could conclude the expert's opinion as unreasonable).

Because Plaintiff has presented evidence in which a reasonable jury could find that the investigation was conducted under inappropriate influences by Mr. Paul Current, the Court cannot summarily conclude that Defendant's investigation was reasonable.

---

[4] Contrary to Defendant's assertion, the absence of an expert does not mean that the issue is now unrefuted or without evidence.  As discussed above, Plaintiff has presented alternative evidence on the issue.

## 2. Settlement Offer

"No insurer shall attempt to settle a claim by making a settlement offer that is unreasonably low."  Cal. Code Regs. tit. 10, § 2695.7(g) (California Fair Claims Settlement Practices Regulations); *see also White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 887 (1985) (admitting settlement offers as evidence of "failure to process the claim fairly and in good faith").  Some of the considerations in determining whether a settlement offer is "unreasonably low" are "the extent to which the insurer considered evidence submitted by the claimant to support the value of the claim," and "the extent to which the insurer considered . . . evidence made known to it or reasonably available."  Cal. Code Regs. tit. 10, § 2695.7(g)(1), (2).

It is true that Defendant's supposed failure to present the "top end" valuation of $500,000 does not by itself make Defendant's offers unreasonably low.  *See, e.g.*, *Signature Dev. Companies, Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223–24 (10th Cir. 2000) ("We are also unwilling to infer that 'settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith.'" (citation omitted)).  If a claims adjuster was obligated to offer the full amount of the settlement authority every time, it "would foreclose any flexibility during negotiations between insurers and those making claims."  *Murphy v. United Fin. Cas. Co.*, No. 15-4199, 2016 U.S. Dist. LEXIS 51390, at *11 (E.D. Pa. Apr. 18, 2016).

Nonetheless, a reasonable fact-finder could still conclude that Defendant's settlement offers were unreasonable for two reasons.  First, Defendant's $175,000 offer and the circumstances leading to that offer could be found unreasonable by the jury.  The Court has already discussed the potentially unconscionable nature of the investigation, and since the $175,000 offer was based on it, a jury could equally conclude that a settlement offer founded on an allegedly deficient investigation is unreasonable.

Second, even if the investigation was adequate and legitimate, the jury could still find that Mr. Current's offers were problematic insofar as they heavily relied on inconclusive causal factors.  The Medical Review, the product of the initial investigation, stated that "this [Accident] could have caused injury to [Plaintiff's] right leg and led to this DVT," and suggested to obtain medical records and consider a cardiologist peer review.  Pl.'s Evid. Ex. 16, ECF No. 37-4 at 157–58.  While the Medical Review also stated that Plaintiff's history of ulcerative colitis or asthma could have caused the DVT, *id.* at 157, the reviewer also flagged that the coagulation studies were normal, Pl.'s Evid. Ex. 1, ECF No. 37-4 at 13.  Finally, even Mr. Current's supervisor cautioned him that "DVT can be caused by trauma and it could take time to develop."  Pl.'s Evid. Ex. 19, ECF No. 37-4 at 167.  Yet Mr. Current did not make any additional inquiries and made the $175,000 settlement offer entirely based on an "inconclusive" causal relationship— the ulcerative colitis or asthma.  Pl.'s Evid. Ex. 1, ECF No. 37-4 at 16–17, 26–27.  Further, this causal relationship was listed again when the offer increased to $350,000.  *Id.* at 54–55; *see also* Pl.'s Evid. Ex. 28, ECF No. 37-4 at 223.  This was even after the external peer review stated that, "with a high degree of medical certainty," the Accident caused the DVT/PE.  UF No. 22, ECF No. 37-3.  By basing the $175,000 settlement offer entirely on a causal relationship that the medical report itself was inconclusive about, and by stating that same relationship as a "mitigating factor" when presenting the $350,000 offer, a jury could find that Defendant's offers were unreasonable.  *Cf. Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721 (2007) ("The insurer may not just focus on those facts which justify denial of the claim."), *as modified* (Dec. 19, 2007).

Defendant raises Plaintiff's failure to provide a counteroffer to Defendant's offer as evidence of reasonableness.  However, Defendant cannot point to such a requirement.  *Cf. Mazik v. Geico Gen. Ins. Co.*, 35 Cal. App. 5th 455, 461 (2019) (affirming a jury verdict that ignored defendant's argument that "there was no negotiation from the other

1  side"). Defendant further contests Plaintiff's failure to provide an expert to assess the

2  reasonableness of the offer. This is not required either. While Plaintiff's "belief" on the

3  reasonableness of the settlement offers, Collins Decl. ¶ 18, 21, 26, ECF No. 37-2, would

4  not be enough by itself, the Court's analysis above demonstrates that Plaintiff has

5  supported his dissatisfaction with "other facts to substantiate that claim." *See Collings v.*

6  *Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995), *cert. denied*, 516 U.S. 1048

7  (1996).

8       Because Plaintiff has presented evidence in which a reasonable jury could find that

9  settlement offers were unreasonable and based on a defective investigation and

10  inconclusive investigation findings, the Court cannot summarily conclude that the

11  settlement offers were reasonable.

12       **B.    The "Genuine Dispute" Defense**

13       Defendant argues that even if Plaintiff provided evidence on the unreasonableness

14  of Defendant's conduct, the Complaint fails as a matter of law because there was a

15  "genuine dispute" regarding the valuation of the UIM claim. Def.'s Mem. of P. & A. at

16  14–21, ECF No. 30-1. Indeed, a bad faith claim should be dismissed on summary

17  judgment if there was a genuine dispute on "a reasonable factual dispute or an unsettled

18  area of insurance law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

19  In determining if a dispute is genuine, "the court does not decide which party is 'right' as

20  to the disputed matter, but only that a reasonable and legitimate dispute actually existed."

21  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th

22  335, 348 n.7 (2001), *as modified on denial of reh'g* (July 30, 2001).

23       Defendant's argument fails because "a genuine dispute does not exist where there

24  is evidence that the insurer failed to conduct a thorough investigation." *Feldman*, 322

25  F.3d at 669 (citing *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 996 (9th Cir. 2001)); *see*

26  *also Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007) ("The genuine dispute

27

28

rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim."), *as modified* (Dec. 19, 2007).  The Court has already discussed various ways a jury could find that Defendant's investigation—both relating to the $175,000 and $350,000 settlement offers—was unreasonably conducted at the time and therefore in bad faith.  Therefore, this defense cannot apply.

## III.  Punitive Damages

Finally, Defendant moves for summary judgment on the issue of punitive damages. "In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively or fraudulently."  *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992).

A determination that a defendant breached its duty of good faith and fair dealing does not in itself establish that defendant acted with the intent necessary to award punitive damages.  *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 922 (1978).  "Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression or fraud to justify an award of punitive damages."  *Mock*, 4 Cal. App. 4th at 328.  There must be "clear and convincing evidence" that the defendant acted maliciously, oppressively, or fraudulently—a conscious disregard of the plaintiff's rights.  *Id.*; Cal. Civ. Code § 3294(a).  Accordingly, conclusory characterizations are insufficient, and Plaintiff must provide more specific details.  *See Grieves v. Superior Court*, 157 Cal. App. 3d 159, 166 (1984); *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (citing *G. D. Searle & Co. v. Superior Court*, 49 Cal. App. 3d 22, 27–32 (1975)).

California follows the Restatement rule regarding assessment of punitive damages against a principal: "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal authorized the

17

doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 822 (1979) (quoting Rest. 2d Torts § 909 (Tent. Draft No. 19, 1973)).

Under California law, an employer may be liable for punitive damages based upon acts of an employee if the employer "authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). Further, "[w]ith respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.*

The evidence required to support punitive damages is "of a different dimension" from what is needed to support bad faith. *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 909 (2000), *as modified on denial of reh'g* (Mar. 29, 2000) (citing *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1286 (1994)). Typically, California courts have held that punitive damages are generally available against insurance companies only if there are "*established policies or practices* in claims handling which are harmful to insureds." *Mock*, 4 Cal. App. 4th at 329 (emphases in original); *accord Mettler v. Gov't Employees Ins. Co.*, No. 18-CV-2303-BAS-MSB, 2020 WL 1875265, at *10 (S.D. Cal. Apr. 15, 2020); *see also Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 923 (1978) (deciding that punitive damages was proper because defendant's challenged conduct was "firmly grounded in established company policy").

Here, Plaintiff ostensibly bases his punitive damages claim on the conduct of Russell Salas, Christopher Davis and John Greer, Jr. Pl.'s Resp. in Opp'n 29–30, ECF No. 37. However, it is plain that Plaintiff actually relies on the conduct of Paul Current.

*See* Pl.'s Evid. Ex. 2, ECF No. 37-4 at 62, 65 (Salas); Pl.'s Evid. Ex. 3, ECF No. 37-4 at 74–77 (Davis and Greer).  Other than describing their respective roles in supervising, supporting, and managing Mr. Current and other employees, Plaintiff has failed to offer "clear and convincing evidence" that the three managers acted maliciously, oppressively, or fraudulently in the investigation of the claim or making the settlement offers.  In addition, Plaintiff has not produced evidence demonstrating that a systematic company policy existed in terms of denying insurance claims.  *Cf. Weisman v. Blue Shield of California*, 163 Cal. App. 3d 61, 67 (1984) (discussing that punitive damages would be appropriate if the "entire nature of defendant's operation . . . reflected defendant's overriding concern for a minimum-expense operation, regardless of the peril").  Plaintiff's string of citations that merely support how these supervisors provided settlement authority (of initially $250,000 and later $500,000) so that Mr. Current could "negotiate" accordingly does not clearly and convincingly support malice, oppression, or fraud on behalf of any of Defendant's managing agents.  *See* Pl.'s Evid. Ex. 1, ECF No. 37-4 at 27–29, 33, 45–49; Pl.'s Evid. Ex. 2, ECF No. 37-4 at 69–71; Pl.'s Evid. Ex. 19, ECF No. 37-4 a 167.

Because Plaintiff has not provided clear and convincing evidence that the three managers acted "maliciously, oppressively, or fraudulently" or that Defendant had an established policy of consciously disregarding the rights of the insured, punitive damages is inappropriate.  Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment on punitive damages.

## CONCLUSION

Based on the above, the Court **GRANTS** Defendant's Motion for Summary Judgment on the First Cause of Action and on Plaintiff's Request for Punitive and Exemplary Damages, and **DENIES** Defendant's Motion for Summary Judgment on the

Second Cause of Action.  The Court also **OVERRULES** both parties' evidentiary objections.

     **IT IS SO ORDERED.**

Dated:  November 16, 2020

Hon. Gonzalo P. Curiel
United States District Judge

19-cv-1392-GPC-MSB